Good morning, Your Honors. I have very little to say to you this morning, because I think everything was aptly covered in the briefing that was sent. But to me, the issue presented here is that the trial court judge, Judge Wilson, in this case, I think he overstepped his bounds in the ruling on this. Because it may very well be that if the case was to proceed to trial, maybe a group of jurors decides not to find the testimony of Mr. Theis credible here. But what Judge Wilson did is he went to the weight of all of that, and I think it was improper for him to do so. Counsel, don't you agree that in order to have survived this motion, you needed to present admissible expert testimony on the issue of causation? I do, and I think that I did. How did what you presented explain to me how what you presented survives the Supreme Court's analysis in Dabbard and Kumho Tire? Well, I think that Mr. Theis, and he's been working with this product for going on 25 or 30 years, and he might have given what I would call perhaps an exuberant explanation of what happened. But the deposition testimony that was submitted in the opposition to the summary judgment shows that he went through a very detailed play-by-play on what he believes had happened and what caused the gun to explode. But how does that – let's assume for the sake of argument that your client at this stage of the litigation should have been looked at as an expert. Let's put that aside for a minute. How does your client's testimony as to how he thinks the missing check ball caused his injury, how does that line up with any of the factors the Supreme Court mandated lower courts look at in deciding whether it survives a Dabbard and Kumho Tire challenge? He was saying this is how he thought it worked, but where are the – how did the Dabbard factors support allowing that as admissible evidence? Well, perhaps I just think we have a disagreement on how it would fit within that. I think he – what he described, and based on his knowledge of the product, that it does survive an analysis like that. And I think that it may very well be – I don't believe what he has to say as opposed to a different expert, but I think to throw it out at this stage was wrong. But to be an expert, don't you have to have sufficient data to support your – I understand he's worked with this for 20 years, but what's the data other than his 20 years of using it? I guess I'm not quite sure what data you would be referencing. He has worked with these guns and he's purchased probably as many of these guns in the course of his work as anybody in the country. And he can take these things apart with his eyes closed. But he didn't run tests and there was nothing in the record that indicated that there had been any sort of research or anything more substantive than him taking it apart and putting it together over 20 years. You are 100 percent correct on that. So is that – in your opinion, that's sufficient data? 100 percent yes. It seems to me, counsel, that's exactly the methodology the Supreme Court specifically rejected in Kumho Tire, where there was an expert who basically said I've seen thousands of tire blowouts and I can tell when the blowouts are caused by a defect or not. And the Supreme Court said Daubert applies in full force to that. And someone simply saying I know it when I see it doesn't survive a Daubert analysis. And it seems to me this is sort of on all fours with what the Supreme Court said doesn't work in Kumho Tire. Well, I would disagree because I think what makes this case different than that is that after the incident happened and Mr. Theis had the device and its parts there, it had this check ball that was missing. And Mr. Theis' experience with this gun is such that he aptly explained, at least in my opinion, in his deposition what the purpose of that ball was. And when it was there and had blown up – I mean, I guess blow up is a bit – that might not quite be the right term – but as he took it apart and that piece was missing, he could say I have these parts before me right here and this part right here is missing. And that's why this gun backfired on me and that's why this had happened. So I think that perhaps is the distinguishing factor, at least in my mind. Isn't there some issue about whether it was actually missing or got lost? I mean, there were parts – my understanding is there were parts that were lost for a while but then found. That part was never found. But there's some sort of issue of even whether that was missing, as you're saying, right? That is absolutely correct. There was an issue on that. And I think that that issue – it's important – but I think that issue is one that should be weighed by a jury. When they're assessing the opinion testimony of these people here, they say, well, maybe Mr. Theis isn't right about this because that ball was gone. But I think to say at this stage, no, no, no, we're not going to take this into account, I think that was wrong. I don't have anything else for you unless you have more questions. Thank you. Thank you, counsel. Thank you. It pleased the court. My name is Sean Rader. I represent Graco. The court's questions are exactly the type of questions that are at the heart of this appeal. Mr. Theis – I pronounce his name differently than counsel does – had no experience whatsoever designing, manufacturing, working in the design or manufacture of this type of product. This is a high-pressure spray gun. It is highly engineered. There's no dispute about that. But you don't need that kind of training in order to, at least at this stage of the proceedings, qualify as an expert or even to testify at trial. Using something for decades can qualify you as an expert, can it? In theory, yes. Let me give you an example, though. We all use computers every day. We all use smartphones every day. We all drive our automobiles every day. That doesn't mean, because you have used them, that you know how things work inside of those products, why they work, what they do or don't do if they're not present. Right, but those things are a little bit more sophisticated than the spray gun, which obviously Mr. Theis was able to take apart and put back together and take apart. I don't think I could take apart a smartphone and put it back together. But simply being able to take it apart does not mean that you have sufficient expertise to know why it works, how it works, how it will or will not work if something is there or not there. So I agree that, in theory, the case law says that you can, through experience, be qualified. But your initial question, Judge Bennett, was exactly on point here. Even assuming Mr. Theis was an expert, which the district court did for purposes of this motion, he basically said, I'll give you that. I'm not even going to rule on that issue. He did not. I'm a little rusty on this, and honestly, this is the kind of case we don't normally see in federal court. We don't normally deal with this kind of tort. But why isn't this res ipsa loquitur? He was using your spray gun, and it operated in a manner in which it was not intended, and it caused him injury. There's obviously something wrong with the spray gun. No. He sprayed himself in the finger is what happened. If we were to try this case, that is the defense. He put his hand in a place it should not have been. But if he comes up with those three elements, why doesn't that put you to your proof to say, no, he sprayed himself in the hand, just as you responded to me? Because he made a manufacturing defect claim. That claim required him to prove a number of elements, or at least to submit sufficient evidence to get to the jury. One of those was, was there a defect when it left Graco's possession? He didn't do any discovery of what the condition of the gun was at the time it left. Counsel, my understanding was that before the accident occurred, he had taken apart the gun several times and put it back together, so it was undisputed that things had happened between the time it left the factory and the accident. Absolutely. He had taken it apart three times, according to his own testimony. He talked about an unknown or unidentified person taking it apart a fourth time. He had used it. It had obviously left the factory in Minnesota, gone to a distributor in California, ended up in his shop, had been used, taken apart three times, taken apart a fourth time. Then he says, I couldn't find what is essentially a very small ball bearing. Counsel, one of the arguments that a plaintiff makes in his brief is that you had no admissible evidence of expert opinion before the district court that you attached your Rule 26 expert report and not actually any, not any, your Rule 26 expert disclosure and no actual expert reports or under oath statements from your experts. Isn't counsel correct that simply attaching an expert disclosure doesn't work under Rule 56? No, he's not, for two reasons. One is we attached the disclosures, which were Rule 26 pleading disclosures of opinions, when we made our motion. They subsequently took the depositions of our experts. They did not submit those transcripts during the summary judgment process. They did not object to their testimony. They did not contradict their testimony, all of which was available before they filed their brief and before they argued to the district court. Now, the reason that it is not important, Your Honor, is that under Celotex and under this Court's decision in Nissan Fire and Marine v. Fritz, which we've cited, 210 Federal 3rd, 1099, on an element on which we do not have the burden of proof, we do not have to submit any admissible evidence. We have to point out that they have not submitted sufficient. The condition is that under Celotex, even if you fail to submit expert testimony, you still have the right to put them to their proof. Exactly. Celotex and Nissan Fire both say if it's their burden. So we were not moving on defenses available to us. We were moving on the failure of the plaintiff to develop sufficient information to justify going to trial before a jury. And under those cases, it's very clear the nonmoving party does not have to show or does not have to submit admissible evidence affirmatively. What we did here was we pointed out that the plaintiff doesn't have it. The plaintiff does not have evidence of causation. The plaintiff does not have evidence of defect existing at the time that the product left our factory. As we sit here, what the argument is now on appeal is very different than what they argued at the Supreme Court or, excuse me, at the district court level. And I would argue that they've waived that argument. They've conflated the two standards. If we were moving affirmatively on an issue on which we had the burden of proof, we would have had to do more. But what we submitted was Mr. Tice's own testimony, the testimony of other witnesses. We submitted our Rule 26 disclosures, which are pleadings, and I would argue under Rule 56 are sufficient for a Rule 56 motion. But ultimately, there's no methodology here. Even if you were an expert, that's what Judge Wilson said, I'm essentially going to grant you that you have enough experience with this product. He did no testing. There's no data. There's no report. He actually several times in his deposition disclaimed knowledge about how these guns actually work, why they actually work. We asked in an interrogatory, essentially contention interrogatories, tell us why you think there was a manufacturing defect. Mr. Tice responded, I don't have sufficient foundation. He did that in a pleading. And then later comes back and says, I'm an expert. You can't do that. Federal court is no place for somebody to come in and just say, I've worked with this thing. I'm an expert. Therefore, I get to tell the jury all kinds of things. I haven't tested. I haven't tried. I haven't replicated. I don't have any data. I don't have any peer-reviewed information to support this. That's not how Daubert works. It's not how Kumho Tire works. You're exactly right. That's what the expert in Kumho did. I've seen this enough times. I know it when I see it. That's what Mr. Tice claimed he could do here. At the Daubert hearing, didn't he basically said he'd never done any specific testing with the checkball? Yeah, Your Honor, there was no Daubert hearing. But at his deposition, he said, I didn't test it. I don't know for sure. Keep in mind what happens here. This is like an epoxy. There are two different materials that come together in the front of this gun. And they harden very quickly. And it becomes very hard. So what he says happened was some of this material went over to one side of the gun that it wasn't supposed to go to, and, therefore, it hardened. He then says, I depressurized the whole system. I unhooked it from its pressure system. I started to take it apart, and somehow it exploded on me. Well, you better have some evidence or some testing to show that could even happen, which our position is it doesn't happen. It was hardened material that gums up the inside of the gun. It needs to be cleaned out, but it doesn't create this mysterious pressure development that he claims happened. When I asked him to explain that at his deposition, he drew a picture, which is in the record, that charitably a 2-year-old child could have drawn. That's the best he could do. There was nothing that shows for a product that is highly engineered. And, Judge Wardlaw, you challenged me a little bit there, but this is a serious piece of equipment. It's a $2,600 spray gun in and of itself. It operates at high pressure. There are fluid dynamics. There's engineering. There's a lot going on inside this type of gun. He loves the gun. He told us he loves it. He just thinks that something happened badly. We have a different view, but, ultimately, he had to have an expert opinion that was reliable, reproducible, something we could test, something we could challenge. He didn't do that. Summary judgment was appropriately granted. Thank you. All right. Thank you, counsel. Tice or Thies v. Graco is submitted.
judges: Wardlaw, Cardone, Bennett